# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**RUBA N.,**[1]

   **Plaintiff,**

            **Case No. 3:22-cv-0310**

  **v.**          **Magistrate Judge Norah McCann King**

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

   **Defendant.**

## OPINION AND ORDER

   This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Ruba N. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

# I.     PROCEDURAL HISTORY

On March 6, 2019, Plaintiff filed her application for benefits, alleging that she has been disabled since November 1, 1969.[3] R. 102, 121, 163–71.[4] The application was denied initially and upon reconsideration. R. 122–26, 130–32. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 133–35. ALJ Sharon Allard held a hearing on December 17, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 34–67. In a decision dated June 25, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 6, 2019, Plaintiff's amended alleged disability onset date, through the date of that decision. R. 15–28. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 29, 2021. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 31, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 7.[5] On February 24, 2023, the case was reassigned to the undersigned. ECF No. 15. The matter is ripe for disposition.

# II.    LEGAL STANDARD

## A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

---

[3] Plaintiff later amended her alleged disability onset date to March 6, 2019, which is the date on which her application was filed. R. 15, 39–40.

[4] Plaintiff had previously filed two unsuccessful applications for benefits in 2013 and 2015. R. 68–91, 104.

[5] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine

if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000);

*see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli

v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec*., 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec*., 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 49 years old on her amended alleged disability onset date and the date on which her application was filed. R. 26. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 17.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: left eye blindness, glaucoma, degenerative disc disease, cervical radiculopathy, musculoskeletal disorder, port wine stain, depressive disorder, generalized anxiety disorder, and paranoid personality disorder. R. 18.  The ALJ also found that Plaintiff's obesity was not severe and that she does not have a medically determinable learning disorder. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–20.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 21–26. The ALJ also found that Plaintiff has no past relevant

work. R. 26.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as an office helper, a routing clerk, and a marker—existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 26–27. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 6, 2019, her amended alleged disability onset date, to the date of the decision. R. 27–28.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum,* ECF No. 12. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

On March 17, 2021, Mehnaz Haq, M.D., Plaintiff's treating physician, completed a five-page, check-the-box and fill-in-the-blank form entitled "Physical Medical Source Statement." R. 440–44 (Exhibit B18F).[6] Dr. Haq diagnosed Plaintiff with a port wine stain, glaucoma, and a musculoskeletal disorder and found that Plaintiff's prognosis was fair. R. 440. Dr. Haq identified the following symptoms: back pain on the left side, hand, elbow, shoulder, knee as well as weakness in hands, and pain and stiffness in Plaintiff's neck. *Id*. Dr. Haq further described

---

[6] An undated duplicate of this statement appears at Exhibit B14F, R. 384–88. For ease of reference, the Court refers to only Exhibit B18F.

Plaintiff's pain as "constant, which [illegible] with activity multiple locations as described above and severe to interfere with ADL, mild relief OTC meds. Was getting PT which was stopped during Covid." *Id*. In support of these findings, Dr. Haq relied on Plaintiff's "unequal length of both legs, [left] leg shorter than [right], bursitis [left] knee, epicondylitis [left] elbow, pelvic asymmetry." *Id*. Asked to describe Plaintiff's treatment and response, including any medication side effects, Dr. Haq responded as follows: "Patient is seeing an orthopedic received injections in [left] elbow and [left] knee. PT and will be going for additional tests[.]" *Id*. The doctor also identified depression and social phobia as psychological conditions affecting Plaintiff's physical condition, R. 441, and indicated that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations, explaining that "Patient suffers from depression and social phobia[.]" R. 440. Dr. Haq indicated that Plaintiff's impairments had lasted or could be expected to last at least twelve months. *Id*. According to Dr. Haq, Plaintiff could walk one city block without rest or severe pain, could sit for 10 minutes at a time before needing to get up because of back pain, could stand for 5 minutes at a time before needing to sit down or walk around, could sit for a total of less than 2 hours in an eight-hour work day, and could stand/walk for a total of less than 2 hours in an eight-hour work day. *Id*. Asked if Plaintiff needed a job that permitted shifting positions at will from sitting, standing or walking, Dr. Haq responded, "[U]nable to work[.]" *Id*. In response to whether Plaintiff needed to include periods of walking around during an eight-hour work day, Dr. Haq wrote, "N/A", and explained that Plaintiff "is unable to sit or stand in one position for more than 10-15 minutes and need[s] to continuously change her position[.]" *Id*. Plaintiff would also need to "frequently" take unscheduled breaks, "few times every hour" because of her pain/paresthesias and numbness. R. 441–42. Asked whether Plaintiff needed to elevate her leg(s) with prolonged sitting, Dr. Haq responded, "N/A[.]" R. 442. Plaintiff

did not need to use a cane or other hand-held assistive device when engaging in occasional standing/walking. *Id*. According to Dr. Haq, Plaintiff could rarely lift and carry less than 10 pounds and could never twist, stoop (bend), crouch/squat, or climb stairs. *Id*. Plaintiff had "significant" limitations with reaching, handling, or fingering. *Id*. However, Dr. Haq did not provide specific functional limitations in this regard, explaining that the doctor was "unable to assess[;] telephone appointment[.]" R. 443. Dr. Haq further opined that Plaintiff was likely to be off task 25% or more of a typical workday due to symptoms severe enough to interfere with the attention and concentration needed to perform work tasks. *Id*. Plaintiff was incapable of even "low stress" work. *Id*. Plaintiff's impairments were not likely to produce "good days" and "bad days." *Id*. Her impairments (physical plus any emotional impairments) were reasonably consistent with the symptoms and functional limitations in the doctor's statement. *Id*. Finally, when asked to describe any other limitations that would affect Plaintiff's ability to work at a regular job on a sustained basis, Dr. Haq responded that Plaintiff "suffers from social phobia and depression for which she's under the care of a psychiatrist." *Id*.

## V.   DISCUSSION

Plaintiff challenges, *inter alia*, the ALJ's consideration of Dr. Haq's opinion. *Plaintiff's Memorandum*, ECF No. 12. For the reasons that follow, Plaintiff's arguments are well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v.*

*Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[7] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 416.927 *with* 20 C.F.R. § 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c).

The regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and

---

[7] As previously noted, Plaintiff's current claim was filed on March 6, 2019.

consistency (paragraph (c)(2) of this section)." *Id*. at § 416.920c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(2).

The applicable regulation further requires an ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 416.920c(b).

At step four of the sequential evaluation process, the ALJ in this matter found that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can occasionally climb ramps and stairs, balance, kneel, stoop, and crouch and cannot crawl, climb ladders, ropes, or scaffolds, or work around hazards, including operation of a motor vehicle, moving mechanical parts or unprotected heights. The claimant can engage in frequent reaching. The claimant has monocular vision but retains sufficient visual acuity to handle and work with any size objects, read normal size print (12 font or larger) and perform tasks which do not require accurate measurements of distance and speed. The claimant can understand and execute simple and routine tasks; have occasional contact with coworkers and supervisors; have incidental contact with the public, but not with tasks that involve direct customer service; and can make simple decisions and adapt to occasional changes in essential work tasks.

R. 21. In reaching this determination, the ALJ found that, *inter alia*, Dr. Haq's opinion was not

persuasive, reasoning as follows:

> In a March 17, 2021 medical source statement, Mehnaz Haq, M.D. opined that the
> claimant had a considerably reduced sedentary exertional capacity, with less than
> two hours each of sitting, standing, and walking, a need to constantly change
> position, no postural activities, *25% or greater off task time, and was incapable of
> even low stress work* (Exhibits B14F & B18F). The undersigned finds Dr. Haq's
> extreme opinion to be generally unpersuasive, as it is not supported by his
> longitudinal treatment records that routinely showed the claimant to have normal
> reflexes, gait, and ambulation (Exhibit B17F, pp 18, 22, 24, & 26). In addition, Dr.
> Haq's opinion is not consistent with the claimant's April 2019 lumbar spine x-ray
> that showed only a moderate levoscoliosis and negative cervical x-ray.
> Furthermore, his opinion is not consistent with the physical examination findings
> of the examining medical consultant that showed the claimant to have intact
> reflexes, sensation, and strength in her lower extremities, as well as negative
> straight leg raising (Exhibit B10F). While the claimant has exertional and
> nonexertional limitations as set forth within, they are not as extensive as Dr. Haq
> opined.

R. 25–26 (emphasis added).

In challenging the ALJ's reasoning in this regard, Plaintiff argues, *inter alia*, that the ALJ

"does not address the mental aspects of Dr. Haq's opinion [*i.e.*, 25% off task and unable to

perform even low stress work] in any way . . . . Rather, it only addresses the opinion of Dr. Haq

regarding Plaintiff's physical limitations." *Plaintiff's Memorandum*, ECF No. 12, p. 19. Plaintiff

also argues that substantial evidence does not support the ALJ's decision because the ALJ failed

to provide any rationale for rejecting this treating opinion. *Id*. Plaintiff goes on to argue that the

ALJ's failure in this regard is not harmless because the vocational expert testified that there

would be no work available for someone off task 15% or more of a work day. *Id*. (citing R. 65).

In response, the Commissioner argues that the ALJ reasonably found Dr. Haq's opinion

unpersuasive because it was unsupported by the doctor's own longitudinal record. *Defendant's

Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14, p. 14.

Plaintiff's arguments are well taken. As detailed above, the ALJ discounted Dr. Haq's

opinion as unsupported by pointing to evidence relating to Plaintiff's physical impairments such as "normal reflexes, gait, and ambulation[,]" an "April 2019 lumbar spine x-ray that showed only a moderate levoscoliosis and negative cervical x-ray[,]" "intact reflexes, sensation, and strength in her lower extremities, as well as negative straight leg raising[.]" R. 25–26. However, this Court has already noted that the ALJ found Plaintiff's depressive disorder and generalized anxiety disorder to be severe at step two. R. 18. Moreover, as previously detailed, Dr. Haq found, *inter alia*, that in additional to physical factors, "emotional factors," specifically, Plaintiff's depression and social phobia, contributed to the severity of her symptoms and functional limitations, affected Plaintiff's physical condition, and affected Plaintiff's ability to work at a regular job on a sustained basis. R. 440–41, 443. Although the ALJ noted that Dr. Haq opined, *inter alia*, that Plaintiff would be off task 25% or more of the time and was incapable of performing even low stress work, the ALJ focused exclusively on Plaintiff's physical conditions and limitations and never explained her reasoning for discounting the doctor's opined limitations that apparently relate, at least in part, to Plaintiff's depression. R. 25–26, 440–41, 443. Notably, as Plaintiff points out, the vocational expert testified that there would be no competitive work available to someone who is off task 15% or more during a work day. R. 65. The ALJ's failure to explain her reasoning in this regard thus frustrates this Court's ability to determine whether or not substantial evidence supports the ALJ's evaluation, her RFC determination, and, ultimately, her disability determination. *Cf. Moldavsky v. Kijakazi*, No. CV 22-1447, 2023 WL 3570927, at *5 (E.D. Pa. May 19, 2023) ("Unclear from the ALJ's summary [of the medical evidence], though, is how this evidence does not support and is inconsistent with Dr. Magidenko's opinion. As such, more than a conclusory statement is needed in order to permit meaningful judicial review and to confirm that substantial evidence supports the ALJ's opinion."); *Sanford v.*

*Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[8] Moreover, remand is appropriate even if, upon further examination of Dr. Haq's opinion and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

Accordingly, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

---

[8] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Haq's opinion and the RFC determination, the Court does not consider those claims.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  May 24, 2024

_s/Norah McCann King_
NORAH McCANN KING
UNITED STATES MAGISTRATE JUDGE

16